UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

EDMIN ALICEA,                                    13-cv-7073 (JGK)

                    Plaintiff,              MEMORANDUM OPINION AND
                                            ORDER
          - against -

THE CITY OF NEW YORK, et. al.,

                    Defendants.

————————————————————————

JOHN G. KOELTL, District Judge:

     Plaintiff Edmin Alicea brings this action against the City
of New York, Police Sergeant Fredy Cruz, and Police Officers
Alejandro Rivas, Paul Arico, Richard Balboolal, Terrence McGrath
and Brendan Regan, alleging violations of his rights under 42
U.S.C. § 1983. The gist of Alicea's allegations is that the
defendants unlawfully arrested Alicea without probable cause and
subjected him to excessive force by choking and striking him,
and restraining him with excessively tight handcuffs. The
defendants allegedly either directly injured Alicea or failed to
intervene while other officers allegedly injured him. Alicea
also alleged that the defendants gave deliberately false
statements and reports of Alicea's participation in a drug
transaction. Alicea asserted § 1983 violations against the
individual officers and a claim against the City of New York
(the "City") pursuant to Monell v. Department of Social
Services, 436 U.S. 658 (1978) ("Monell"). The plaintiffs also

1

asserted state law claims against the individual defendants and a claim against the City based on respondeat superior.

The defendants now move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(a).

For the reasons explained below, the motion is granted in part and denied in part.

## I.

Unless otherwise noted, the following facts are undisputed.

On March 27, 2012, Sergeant Cruz directed defendants Rivas, Arico, McGrath, Balboolal, and Regan, all New York City police officers, to patrol the area around 172nd Street and Audobon Avenue in Manhattan to address narcotics conditions in the area. Officer Balboolal was posted as an observation lookout, monitoring for possible narcotics sales on 172nd Street between Audobon and St. Nicholas Avenues. Defs.' 56.1 Stmt. ¶¶ 1-3; Pl.'s 56.1 Resp. ¶¶ 1-3.

The parties dispute what Officer Balboolal observed at this location. Officer Balboolal testified that he saw a Hispanic male in a black jacket, blue pants, and a baseball cap give an individual what appeared to be U.S. currency in exchange for a small object. Fudim Decl., Ex. 3 ("Balboolal Dep.") at 49, 53, 55. Officer Balboolal testified that the individual he saw was engaged in a drug transaction. Id. at 52.

The parties agree that Officer Balboolal communicated a description of a Hispanic male by department radio and that Officer Rivas responded to the radio transmission. Defs.' 56.1 Stmt. ¶¶ 7-8; Pl.'s 56.1 Resp. ¶¶ 7-8. Officer Rivas testified that Officer Balboolal believed that he had observed a hand-to-hand drug transaction. Fudim Decl., ex. 4 ("Rivas Dep"), at 82. According to the defendants, Officer Balboolal's radio transmission included a description that the individual who had engaged in the drug transaction was a Hispanic male wearing a black jacket, blue pants, and a baseball cap, and that the individual was headed west towards Broadway on 172nd Street. Fudim Decl. Ex. 10; Balboolal Dep. at 49. Although Alicea disputes that Officer Balboolal described the individual as anything other than a Hispanic male, Alicea had no personal knowledge of the content of Officer Balboolal's transmission and the more detailed description is corroborated by Officer Balboolal's memo book entry. Defs.' 56.1 Stmt. ¶ 7; Pl.'s 56.1 Resp. ¶ 7; Fudim Decl., Ex. 10.

After receiving Officer Balboolal's transmission, Officer Rivas and two other officers drove to 172nd Street and Broadway. There, Officer Rivas saw a Hispanic male who turned out to be Alicea. Defs.' 56.1 Stmt. ¶¶ 10-11; Pl.'s 56.1 Resp. ¶¶ 10-11. Officer Rivas testified that he identified Alicea as the individual described by Officer Balboolal based on Alicea's

clothing. Rivas Dep. at 89. Alicea was wearing a black coat, a baseball cap, and black pants. Fudim Decl., Ex. 9.

The parties dispute which two police officers were with Officer Rivas in the vehicle. The parties agree that one of the officers present in the vehicle was Officer Arico, and that Officer Balboolal and Sergeant Cruz were not present at the scene. Defs.' 56.1 Stmt. ¶¶ 22-23, 39-44; Pl.'s 56.1 Resp. ¶¶ 39-44, 48. Alicea asserts that one of the officers in the vehicle was Officer Regan, but Officer Regan denies being at the scene. Pl.'s 56.1 Resp. ¶ 47; Fudim Decl, Ex. 7 ("Regan Dep.") at 32. Officer Rivas testified that Officer McGrath was with him in the vehicle, but Officer McGrath disputes this account. Rivas Dep. at 79-80; Fudim Decl., Ex. 6 ("McGrath Dep.") at 15.

Officer Rivas testified that when he saw Alicea, he approached him and saw Alicea place a small green object into his mouth and swallow it. Rivas Dep. at 90. Officer Rivas believed that item to be marijuana. Id. at 90-91. The plaintiff disputes that Officer Rivas approached him and that the plaintiff swallowed any object at the scene. Pl.'s 56.1 Resp. ¶¶ 13-14.

Alicea testified that while he was walking, a uniformed police officer with spiked hair and shaved sides grabbed him by the neck, briefly choked him, and then tightly handcuffed him. Fudim Decl., Ex. 2 ("Alicea Dep.") at 66-70. According to

Alicea, this officer then yanked Alicea's arms upward, causing Alicea to feel a pop in his shoulder. Id. at 70. Alicea identified this officer as Officer Arico. Pl.'s 56.1 Resp. ¶¶ 48-49; Sanborn Decl., Ex. D ("Alicea Decl.") ¶¶ 10-12. Officer Arico testified that he did not arrest Alicea and could not recall if he was present for the arrest. Fudim Decl., Ex. 8 ("Arico Dep.") at 36. Officer Rivas testified that he handcuffed Alicea but that he did not remember whether he observed Officer Arico handcuff Alicea. Rivas Dep. at 93-94. Alicea disputes that it was Officer Rivas who handcuffed him, and the defendants do not dispute that it may have been Officer Arico who handcuffed Alicea. Pl.'s 56.1 Resp. ¶¶ 17-19; Defs.' Reply to Pl.'s 56.1 Resp. ¶ 48. The defendants deny, however, that Officer Arico choked Alicea or yanked his arms. Defs.' Reply to Pl.'s 56.1 Resp. ¶¶ 48-49.

Officers Rivas and Arico, as well as the third officer in the vehicle, drove Alicea to a police precinct. There, at Alicea's holding cell, Officer Balboolal identified Alicea as the individual he observed engage in the hand-to-hand drug transaction he witnessed on 172nd Street between Audubon and St. Nicholas Avenues. Officer Balboolal informed Sergeant Cruz that he had observed Alicea engage in a hand-to-hand drug transaction, and Officer Rivas informed Sergeant Cruz that he had observed Alicea swallow marijuana. Sergeant Cruz then

verified Alicea's arrest. Defs.' 56.1 Stmt. ¶¶ 27-31; Pl.'s 56.1 Resp. ¶¶ 27-31.

Alicea testified that, when he arrived in the precinct parking lot, Officer Arico pulled Alicea's handcuffs and Alicea cried out in pain while Officer Arico laughed with Officer Regan. Alicea Dep. at 82-83. Alicea alleges that once they were inside the precinct, Officer Arico pushed Alicea's chest onto the precinct desk and simultaneously pulled Alicea's handcuffs up while Officer Regan and a police officer at the desk stood by. Alicea Dep. at 85. The defendants dispute that Officer Arico inflicted pain on Alicea in the precinct parking lot or inside the precinct, and Officer Regan testified that he never saw Alicea at the precinct. Defs.' Reply to Pl.'s 56.1 Resp. ¶ 55; Regan Dep. at 26.

On March 27, 2012, Officer Rivas signed a criminal complaint charging Alicea with attempted tampering of physical evidence in violation of New York Penal Law §§ 110/215.40(2) based on Alicea's alleged swallowing of a green leafy substance. No other defendant signed the complaint. Defs.' 56.1 Stmt. ¶¶ 32-34; Pl.'s 56.1 Resp. at 32-34; Fudim Decl. Ex. 15.

In October 2014, the plaintiff brought this action against the City of New York, Sergeant Cruz and Officers Rivas, Arico, Regan, Balboolal, and McGrath, alleging violations of his civil rights under § 1983. The plaintiff alleged causes of action for

6

false arrest, excessive force, and failure to intervene against all the individual defendants.[1] The plaintiff also alleged a cause of action against the City of New York for municipal liability pursuant to Monell. Alicea alleged physical and emotional injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights. See Second Amended Complaint ("SAC") ¶¶ 54, 60, 71, 76.

The defendants now move for partial summary judgment. The defendants seek to dismiss the claim for false arrest against all the defendants except Officer Balboolal. The defendants seek to dismiss the claim for excessive force or failure to intervene against all the defendants except Officers Rivas and Arico. To the extent Alicea asserts a claim for malicious prosecution, the defendants seek to dismiss that claim against all the defendants except Officer Rivas. To the extent Alicea asserts a cause of action for denial of his right to a fair trial, the defendants seek to dismiss that claim against all the defendants. The defendants seek to dismiss the Monell claim for municipal liability against the City.

---

[1] Alicea also accused the individual defendants of state law torts of malicious prosecution and denial of the right to a fair trial. Alicea also alleged that the City was liable for these torts pursuant to respondeat superior. See SAC ¶¶ 73-75. As described below, Alicea withdrew the denial of the right to a fair trial claim against all the defendants and the malicious prosecution claim against all the defendants except Officer Rivas.

By letter before the argument of the present motion and during the oral argument, Alicea withdrew all § 1983 claims against Officer McGrath because he concedes that Officer McGrath was not present at the arrest. Dkt. No. 91. Thus, all claims against Officer McGrath are dismissed. Alicea also withdrew the Monell against the City, as well as the excessive force and failure to intervene claim against Officer Balboolal. Those claims are also dismissed. To the extent Alicea brought a claim for denial of the right to a fair trial, Alicea withdrew that claim against all the defendants. To the extent Alicea brought a claim for malicious prosecution, Alicea withdrew that claim against all the defendants except Officer Rivas. The claim for denial of the right to a fair trial against all the defendants and the claim for malicious prosecution against all the defendants except Officer Rivas are therefore dismissed. Alicea opposes summary judgment dismissing his remaining claims.

## II.

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]he trial court's task at the summary

judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify the material facts and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party." See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d

Cir. 1994); see also Gutierrez v. City of New York, No. 13-cv-
3502 (JGK), 2015 WL 5559498, at *3 (S.D.N.Y. Sept. 21, 2015).

### III.

The defendants move for summary judgment dismissing the
false arrest claim against Sergeant Cruz and Officers Regan,
Arico, and Rivas. They argue that Officer Regan was not
personally involved in the plaintiff's arrest because he was not
present at the scene of the arrest. They further contend that
even if Officer Regan was present, Officer Regan is entitled to
qualified immunity. The defendants argue that the false arrest
claims against Sergeant Cruz and Officers Arico and Rivas should
be dismissed because they are also entitled to qualified
immunity.

"[A]n arrest must be supported by probable cause or else it
violates the Fourth Amendment." United States v. Valentine, 539
F.3d 88, 93 (2d Cir. 2008) (citing Beck v. Ohio, 379 U.S. 89, 91
(1964)). Section 1983, to the extent that it provides a remedy
for violations of the Fourth and Fourteenth Amendments, protects
an individual's right to be free from arrest without probable
cause. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).
When analyzing a § 1983 claim for false arrest, a court should
generally refer to "the law of the state in which the arrest
occurred." Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004)
(collecting cases). "Under New York law, a plaintiff claiming

false arrest must show, *inter alia,* that the defendant
intentionally confined [the plaintiff] without [the plaintiff's]
consent and without justification." Amore v. Novarro, 624 F.3d
522, 532 n. 13 (2d Cir. 2010) (internal quotation marks and
citation omitted). This requires the personal involvement of the
defendant. Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006);
see also Gutierrez, 2015 WL 5559498, at *3. A defendant is
personally involved in a false arrest if he directly
participates in the arrest or if he indirectly participates by
"ordering or helping others to do the unlawful acts." Provost v.
City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001). "The
existence of probable cause to arrest constitutes justification
and is a complete defense to an action for false arrest, whether
that action is brought under state law or under § 1983." Amore,
624 F.3d at 536 (internal quotation marks and citation omitted).

It is disputed whether Officer Regan was present at the
arrest. Defs.' 56.1 Stmt. ¶ 37; Pl.'s 56.1 Resp. ¶ 37. While
Officer Regan testified that he was patrolling with Officer
McGrath the day of Alicea's arrest, Officer McGrath testified
that he returned to the precinct with Officer Regan and Officer
McGrath processed another arrest at that time. Officer McGrath
did not know if Officer Regan headed back out at that time.
Regan Dep. at 32; McGrath Dep. at 35-37. Alicea and another
arrestee identified Officer Regan as the driver of the police

vehicle used by Officers Rivas and Arico to transport them to the precinct. Alicea Decl. ¶¶ 7-9; Sanborn Decl., Ex. E ("Daniels Decl.") ¶¶ 6-8. At the summary judgment stage, all reasonable inferences are to be drawn in favor of the nonmoving party, and the Court cannot conclude based on the present record that Officer Regan was not personally involved in Alicea's arrest.

Nonetheless, summary judgment should still be granted dismissing the false arrest claim against Officer Regan, as well as the false arrest claims against Officers Arico and Rivas, because the three officers are entitled to qualified immunity. In the context of a false arrest claim, an officer is entitled to qualified immunity if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Rogers v. City of Amsterdam, 303 F.3d 155, 158 (2d Cir. 2002) (internal quotation marks omitted); Caceres v. Port Auth. of N.Y. and N.J., 631 F.3d 620, 622 (2d Cir. 2011); see also Adam v. Metro. Transp. Auth., No. 07-cv-8807 (JGK), 2011 WL 891441, at *7 (S.D.N.Y. Mar. 15, 2011). "Probable cause for an arrest exists when an officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested

has committed or is committing a crime.'" Id. at *5 (quoting
Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010)). So
long as the officers had at least arguable probable cause for
the arrest, the officers are entitled to qualified immunity.
McKay v. City of New York, 32 F. Supp. 3d 499, 506 (S.D.N.Y.
2014).

Alicea disputes that Officer Rivas saw him ingest a green
substance. Pl.'s 56.1 Resp. ¶ 14. Alicea plainly had personal
knowledge of whether he ingested a green substance, and his
denial based on his knowledge creates an issue of fact as to
whether Officer Rivas could have seen Alicea ingest the green
substance. But even though there are questions of fact as to
whether Officer Rivas saw Alicea ingest a substance, the
officers had a separate basis to arrest Alicea based on the
description Officer Balboolal transmitted over the radio.
Indeed, the arrest report for Alicea that was completed by
Officer Rivas includes Officer Balboolal's observations as a
basis for the arrest. See Fudim Decl., Ex. 9. Officer Balboolal
testified that he observed a Hispanic male in a black jacket,
blue pants, and a baseball cap engage in what he believed to be
a drug transaction. Balboolal Dep. at 49, 53, 55. The parties
agree that Officer Balboolal radioed a transmission describing a
Hispanic male, and that Officer Rivas responded to the
transmission. See Defs.' 56.1 Stmt. ¶¶ 7-8; Pl.'s 56.1 Resp. ¶¶

7-8. Officer Rivas testified without contradiction that Officer Balboolal radioed that he observed a hand-to-hand drug transaction. Rivas Dep. at 82. The defendants assert that Officer Balboolal's transmission included a description of the individual's clothing and that the individual was walking west on 172nd Street towards Broadway. Defs.' 56.1 Stmt. at ¶ 7.

The defendants argue that Officers Rivas, Regan, and Arico had probable cause to arrest Alicea based on Officer Balboolal's description. See Husbands ex rel. Forde v. City of New York, 335 F. App'x 124, 127 (2d Cir. 2009) ("Where law enforcement authorities are cooperating in an investigation..., the knowledge of one is presumed shared by all."); Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) ("The existence of probable cause need not be assessed on the basis of the knowledge of a single officer."). Alicea alleges, without any personal knowledge that Officer Balboolal only radioed a description of a "Hispanic male." Pl.'s 56.1 Resp. ¶ 7. However, the evidence does not support that allegation. Officer Rivas testified that he identified Alicea as the individual described by Officer Balboolal based on "[t]he description of his clothing." Rivas Dep. at 89. That description was also supported by Officer Balboolal's memo book which contained a detailed description of the Hispanic male's clothing. Fudim Decl., Ex. 10. Officer Rivas also testified that Officer Balboolal stated

in his transmission the direction the individual was walking.
See Rivas Dep. at 84 ("I observed him coming in the direction
that Officer Balboolal had stated that I was walking towards.").[2]
The plaintiff's bare allegation that Officer Balboolal only gave
a description of a "Hispanic male" is not supported by evidence
and does not create a triable issue of fact.

Officers Regan, Arico, and Rivas had at least arguable
probable cause to arrest Alicea on the basis of Officer
Balboolal's radio transmission that he had observed a hand-to-
hand drug transaction by a Hispanic male dressed in specific
clothing walking at a specific location. Therefore, all three
officers are entitled to qualified immunity on the false arrest
claims against them. Those claims should be dismissed.[3]

---

[2] This account is consistent with the arrest report, which notes that Alicea
was arrested in front of an address on 172nd Street between Broadway and Fort
Washington Avenue. See Fudim Decl., Ex. 9.

[3] At the argument of the motion, Alicea argued that even if the officers had
arguable probable cause based on Officer Balboolal's radio transmission, the
officers are not entitled to qualified immunity for the arrest because,
according to Alicea, the officers subsequently acted unreasonably by using
excessive force on the plaintiff, and, in the case of Officer Rivas,
allegedly signing a false criminal complaint. The plaintiff cites Ricciuti v.
New York City Transit Authority, 124 F.3d 123, 127-28 (2d Cir. 1997), for the
proposition that an officer is only entitled to qualified immunity if it is
"objectively reasonable [. . .] to believe, even if mistakenly, that [his]
conduct did not violate constitutional rights." However, "[a] police officer
is entitled to qualified immunity *shielding him or her from a claim for
damages for false arrest* where (1) it was objectively reasonable for the
officer to believe there was probable cause to make the arrest, or (2)
reasonably competent police officers could disagree as to whether there was
probable cause to arrest." Id. at 128 (emphasis added). While the officers'
alleged subsequent unreasonable actions, if true, might deprive those
officers of qualified immunity for the use of excessive force and might
deprive Officer Rivas of qualified immunity for the malicious prosecution
claim, the officers would retain qualified immunity against claims for false
arrest because there was arguable probable cause for the arrest. In Ricciuti,
the Court of Appeals found that the defendants were entitled to qualified

Sergeant Cruz is also entitled to qualified immunity for the false arrest charge because he was entitled to rely on the representations of his fellow officers when he verified Alicea's arrest. See Keller v. Sobolewski, No. 10-cv-5198 (FB), 2012 WL 4863228, at *3 (E.D.N.Y. Oct. 12, 2012). Officer Balboolal identified Alicea to Sergeant Cruz as the individual Officer Balboolal observed engage in a hand-to-hand drug transaction. Defs.' 56.1 Stmt. ¶¶ 28, 30; Pl.'s 56.1 Resp. ¶¶ 28, 30. Officer Rivas also informed Sergeant Cruz that Officer Rivas observed Alicea swallow marijuana. Defs.' 56.1 Stmt. ¶ 31; Pl.'s 56.1 Resp. ¶ 31. Based on these facts, a reasonable trier of fact could not find that Sergeant Cruz's action in verifying Alicea's arrest was objectively unreasonable. See Keller, 2012 WL 4863228, at *3. Therefore, Sergeant Cruz is entitled to qualified immunity on the false arrest claim against him. That claim should be dismissed.

## IV.

The defendants also move for summary judgment dismissing the plaintiff's claim alleging excessive force or failure to intervene against Sergeant Cruz and Officer Regan.

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is

---

immunity for their arrest of Alfred Ricciuti even though summary judgment should not have been granted dismissing on qualified immunity grounds a claim of fabrication of evidence.

to be analyzed under the Amendment's 'reasonableness' standard."
Brown v. City of New York, 798 F.3d 94, 100 (2d Cir. 2015)
(quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). "Because
the excessive force and false arrest factual inquiries are
distinct, establishing a lack of probable cause to make an
arrest does not establish an excessive force claim, and vice-
versa." Beier v. City of Lewiston, 354 F.3d 1058, 1064 (9th Cir.
2004) (citing Arpin v. Santa Clara Valley Transp. Agency, 261
F.3d 912, 921-22 (9th Cir. 2001)); see Papineau v. Parmley, 465
F.3d 46, 62 (2d Cir. 2006) (Sotomayor, J.) (rejecting argument
that "any force employed by a police officer would be unlawful
so long as probable cause did not exist"); Zellner, 494 F.3d at
378. Because "the lawfulness of an arrest is irrelevant to an
excessive force analysis," see Sebright v. City of Rockford, 585
F. App'x 905, 907 (7th Cir. 2014) (per curiam) (unpublished)
(collecting cases), the plaintiff's excessive force claim must
be analyzed separately from the false arrest claim. See also
Gutierrez, 2015 WL 5559498, at *6.

A police officer's use of force is "excessive" in violation
of the Fourth Amendment if it is objectively unreasonable in
light of the facts and circumstances known to the officer.
Lennon v. Miller, 66 F.3d 416, 425-26 (2d Cir. 1995); see also
Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004).
It is well established that "[n]ot every push or shove" is

excessive. Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (Friendly, J.), overruled on other grounds by Graham, 490 U.S. 386. To determine whether the amount of force applied to the plaintiff was unreasonable the Court should consider: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. Excessive force claims require "serious or harmful," not "de minimis" use of force. Drummond v. Castro, 522 F. Supp. 2d 667, 678-79 (S.D.N.Y. 2007) (internal quotation marks and citations omitted); see also Gutierrez, 2015 WL 5559498, at *7.

Even if an officer is not personally responsible for excessive force, he may be liable under § 1983 for failing to intervene during the use of excessive force. Curley v. Vill. Of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be."). Liability attaches when "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v.

Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008); see also Gutierrez, 2015 WL 5559498, at *9.

With respect to Sergeant Cruz, Alicea acknowledges that Sergeant Cruz was not present at the scene of the arrest. Pl.'s 56.1 Resp. ¶¶ 41-43. Nonetheless, Alicea asserts that Sergeant Cruz is liable because he was inside the precinct at the time when Officer Arico allegedly inflicted pain on Alicea. But Alicea has not produced any evidence that Sergeant Cruz was present when excessive force was allegedly used against Alicea and that Sergeant Cruz had a realistic opportunity to intervene to stop it. Alicea has never identified Sergeant Cruz as being present at the desk when he was brought to the precinct, and Alicea has adduced no other evidence that Sergeant Cruz was in the same room with Officer Arico and the plaintiff when Officer Arico allegedly used excessive force against the plaintiff. The plaintiff only alleged that Sergeant Cruz was in the precinct when the plaintiff was allegedly harmed. Although Alicea did testify that there was an officer behind the precinct desk when Officer Arico allegedly pushed Alicea's chest against the desk, he could not identify the officer or describe what the officer looked like. Alicea Dep. at 85. Sergeant Cruz testified that he was near the precinct desk when he first saw Alicea at the precinct. Fudim Decl. Ex. 5 ("Cruz Dep.") at 128-30. Sergeant Cruz also testified that he spoke to Alicea in the holding cell

area and questioned him about allegedly swallowing marijuana.
Sergeant Cruz also testified that Alicea said that he did not
want to go to the hospital. Id. at 133. There is no evidence
that Sergeant Cruz was present during the specific instance when
Officer Arico allegedly injured Alicea at the desk. Given the
absence of any evidence that Sergeant Cruz was present for the
alleged use of excessive force and had a realistic opportunity
to intervene, summary judgment should be granted dismissing the
excessive force and failure to intervene claim against Sergeant
Cruz.

However, there is a dispute of material fact as to whether
Officer Regan was present at the scene of Alicea's arrest.
Defs.' 56.1 Stmt. ¶ 37; Pl.'s 56.1 Resp. ¶ 37. The parties
dispute whether Officer Regan stood by in the precinct parking
lot and laughed as Officer Arico allegedly pulled on Alicea's
handcuffs while Alicea cried out in pain. Pl.'s 56.1 Resp ¶ 55
("At the 33rd Precinct, Arico inflicted further pain on
plaintiff's left shoulder while laughing with Regan."). The
plaintiff has presented sufficient evidence that Officer Regan
had a reasonable opportunity to intervene and prevent Officer
Arico from allegedly inflicting harm on the plaintiff's
shoulder. Additionally, Alicea testified that Officer Regan was
present at the precinct desk when Officer Arico allegedly
slammed Alicea into the desk and pulled Alicea's handcuffs.

Alicea Dep. at 85. Although Officer Regan denies seeing Alicea at the precinct, Regan Dep. at 26, construing the facts in favor of Alicea, Officer Regan could have had a reasonable opportunity to intervene during this instance as well. There is a triable issue of fact as to whether Officer Arico harmed the plaintiff at the precinct and whether Officer Regan had an opportunity to prevent this harm. Accordingly, summary judgment cannot be granted dismissing the claim against Officer Regan for failure to intervene.

## V.

The defendants assert that the plaintiff has not brought a claim for malicious prosecution against Officer Rivas. The defendants point out that Alicea does not explicitly allege a specific cause of action for malicious prosecution. See SAC ¶ 53. The first cause of action is asserted against all of the individual defendants for false arrest in violation of 42 U.S.C. § 1983. In the course of pleading that cause of action, the plaintiff alleges that he was subjected to, among other things, "malicious prosecution." SAC ¶ 53. Moreover, the fourth cause of action alleges state law claims against the individual defendants and against the City on a respondeat superior basis. One of the state law claims is that the plaintiff was subjected to malicious prosecution. SAC ¶¶ 73, 75. Therefore, the claim of malicious prosecution remains in this case, although the

plaintiff has limited that claim to a claim against Officer Rivas.[4]

The defendants do not move for summary judgment for the malicious prosecution claim against Officer Rivas to the extent Alicea has pleaded it. Alicea has adequately pleaded the claim, and therefore the malicious prosecution claim against Officer Rivas cannot be dismissed.

## CONCLUSION

The Court has considered all the parties' arguments. To the extent not specifically addressed above, the parties' arguments are either moot or without merit. For the foregoing reasons, the defendants' motion for summary judgment is granted in part and denied in part. The Clerk of Court is directed to close all pending motions.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **May 2, 2016**

_____/s/_____

**John G. Koeltl**
**United States District Judge**

---

[4] The City would be liable under respondeat superior for malicious prosecution liability of Officer Rivas under the fourth cause of action.