**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------
**EDMIN ALICEA,**

              **Plaintiff,**           **13-cv-7073 (JGK)**

     **- v.-**                  <u>**OPINION AND ORDER**</u>

**THE CITY OF NEW YORK, ET AL,**

              **Defendants.**
------------------------------------
**JOHN G. KOELTL, District Judge:**

    This action began in 2013 when the plaintiff, Edmin Alicea, principally alleged pursuant to 42 U.S.C. § 1983 that Officer Alejandro Rivas and a John Doe Officer had violated his constitutional rights under the Fourteenth Amendment by falsely arresting him and by using excessive force in the process by striking and choking him and using excessively tight handcuffs. The defendants denied the allegations. Over the next two years, the plaintiff's allegations morphed and the claims and the defendants multiplied. Defendants and claims were added; defendants and claims were dismissed. By the time of trial, the plaintiff's theory was principally that a different Officer, Officer Paul Arico, had used excessive force on him by handcuffing the plaintiff from behind, then pulling the plaintiff's arms back and yanking them upward, which severely injured the plaintiff's shoulder. The plaintiff also claimed that arresting Officers Rivas and Brendan Regan were liable for

failing to intervene. In addition, the plaintiff claimed that Officer Rivas was liable for malicious prosecution.

Following a trial, the jury found Officer Arico liable on the excessive force claim in the amount of $150,000.00 in compensatory damages and $25,000.00 in punitive damages. However, the jury found that Officers Rivas and Regan were not liable on any Count.

Pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d)(2), the plaintiff has moved for $847,060.00 in attorney's fees, and $11,944.91 in costs. The defendants oppose the motion, arguing that the plaintiff's recovery should be limited to $156,730.00 in attorney's fees, and $3,443.87 in costs.

## I.

The underlying facts are not generally in dispute. Many of the relevant facts underlying the plaintiff's claims are discussed in <u>Alicea v. City of New York</u>, No. 13-CV-7073 (JGK), 2016 WL 2343862 (S.D.N.Y. May 3, 2016). Familiarity with that decision is presumed.

The plaintiff was represented by the law firm Reibman & Weiner (the "Firm"); the defendants were represented by the New York City Law Department and the Office of the Corporation Counsel of the City of New York.

2

On October 4, 2013, the plaintiff initiated this action by filing a Complaint. The plaintiff asserted, among other things, claims against Officer Rivas and a John Doe Officer for excessive force, false arrest, false imprisonment, malicious prosecution, and the denial of the right to a fair trial, and a Monell claim against the City of New York (the "City"). The Complaint alleged with respect to excessive force that the arresting officers had struck and choked the plaintiff and used excessively tight handcuffs. See Compl. ¶¶ 12, 16.

On April 23, 2014, the plaintiff filed a First Amended Complaint (the "FAC") adding claims against Officer Richard Baboolal and Sergeant Fredy Cruz. The FAC alleged that Officers Baboolal and Rivas and Sergeant Cruz had struck and choked the plaintiff. FAC ¶ 13.

On October 16, 2014, the plaintiff filed a Second Amended Complaint (the "SAC") adding claims against Officers Regan, Arico, and Terrance McGrath. The plaintiff had now alleged multiple claims against seven defendants. With respect to excessive force, the plaintiff alleged that Officer Rivas struck and choked him, while Officers McGrath, Arico, and Regan "participated in this force, or otherwise stood by and observed, and did nothing to intervene and stop the force being used by defendant Rivas against plaintiff." SAC ¶¶ 18-19. The plaintiff at this point alleged that Officer Rivas "pulled [plaintiff's]

arms behind his back multiple times while he was handcuffed, intentionally injuring and damaging plaintiff's rotator cuff and wrists." SAC ¶ 26.

On October 2, 2015, the defendants filed a motion for partial summary judgment to dismiss some of the plaintiff's claims. See Dkt. 71. On April 13, 2016 --- the day before oral argument on the summary judgment motion --- the plaintiff voluntarily dismissed with prejudice all of his claims against Officer McGrath because Officer McGrath was not present at his arrest, his excessive force claim against Officer Baboolal, and his Monell claim against the City. Dkt. 91; see also Alicea, 2016 WL 2343862, at *3. During oral argument, the plaintiff also withdrew his claims for the denial of the right to a fair trial against all the defendants. In addition, he withdrew his claims for malicious prosecution against all the defendants except the claim against Officer Rivas. See Alicea, 2016 WL 2343862, at *3.

In a Memorandum Order and Opinion dated May 3, 2016, this Court dismissed the plaintiff's false arrest claims against Officers Regan, Arico, Rivas, and Sergeant Cruz because the arresting officers at least had probable cause to arrest the plaintiff. Id. at *6. This Court also dismissed the excessive force/failure to intervene claim against Sergeant Cruz. Id. at *7.

On June 11, 2016, the plaintiff voluntarily withdrew all of his claims against Officer Baboolal. Dkt. 104.

Officers Arico, Regan, and Rivas remained defendants in the action, as did the City on a theory of *respondeat superior*. The parties filed motions in limine and other documents in preparation for trial.

On July 12, 2016 --- less than a month before the start of trial --- the plaintiff changed his theory of the case. The plaintiff filed a Third Amended Complaint (the "TAC") alleging that Officer "Arico [had] choked plaintiff, forced plaintiff's wrists behind his back and placed excessively tight handcuffs on plaintiff's wrists, and then lifted plaintiff's handcuffed arms upwards with such force and to such a height that plaintiff stood on his tip toes and suffered a permanent injury to his left shoulder." TAC ¶ 15. The plaintiff now directed the failure to intervene claims against Officers Rivas and Regan. TAC ¶ 16. Officer Rivas was no longer the target of an excessive force claim. Gone was any allegation that an officer had struck the plaintiff.

Trial began on August 8, 2016. The case was primarily tried by Marc Reibman, a partner at Reibman & Weiner, and James Sanborn, a then-associate at the Firm.[1] Aissatou Barry, a first-year associate, also sat at counsel's table. Steven Weiner,

---

[1] Sanborn has since left the Firm.

another partner at Reibman & Weiner, observed the proceedings from the gallery. Weiner did not enter a notice of appearance in this action until oral argument on the present motion, long after trial had ended. See Dkt. 175.

The trial lasted four days. Reibman and Sanborn ably tried the case. Unlike many civil rights cases, the medical evidence was important in determining not only damages, but also liability. In particular, Reibman and Sanborn undermined the defendants' theory that the medical evidence showed that the plaintiff's injuries were caused by something other than force.

On August 11, 2016, the jury found Officer Paul Arico liable on the excessive force claim in the amount of $150,000.00 in compensatory damages and $25,000.00 in punitive damages. Dkt. 139. However, the jury found that Officers Rivas and Regan were not liable on any Count.

The City agreed that it would indemnify Officer Arico, but informed the plaintiff that, because of the bureaucratic process, it would not pay on the judgment for a period of about three months, although the judgment would accrue substantial post-judgment interest during the delay. Counsel for the plaintiff disagreed with that timetable and filed a restraining notice against Officer Arico on his personal bank account. The City promptly paid the judgment's principal, but counsel for the plaintiff still refused to withdraw the restraining notice

because the City had yet to pay the bill of costs and the post-judgment interest. See Dkt. 152. After a conference with the Court on October 27, 2016, counsel for the plaintiff agreed to withdraw the restraining notice.

The motion for attorney's fees followed.

## II.

Section 1988 provides: "In any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." The jury's verdict in the plaintiff's favor makes him a "prevailing party" and as a result he is entitled to recover reasonable attorney's fees as part of the costs assessed against the defendants.

In determining the amount of a fee award, district courts must calculate the "presumptively reasonable fee." Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 172 (2d Cir. 2009). "The starting point for determining the presumptive reasonable [fee] is the 'lodestar' amount, which is 'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" Charles v. City of New York, No. 13-cv-3547 (PAE), 2014 WL 4384155, at *2 (S.D.N.Y. Sept. 4, 2014) (quoting Gaia House Mezz LLC v. State Street Bank & Trust Co., No. 11-cv-3186 (TPG), 2014 WL 3955178, at *1 (S.D.N.Y. Aug. 13, 2014)). "The

presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" <u>Simmons</u>, 575 F.3d at 174 (quoting <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 493 F.3d 110, 112, 118 (2d Cir. 2007)). To arrive at a reasonable fee, courts consider, among other factors, the factors set forth in <u>Johnson v. Ga. Highway Express Inc.</u>, 488 F.2d 714, 717-719 (5th Cir. 1974). <u>Arbor Hill</u>, 522 F.3d at 186 n.3.[2] Courts also "consider the rates charged by attorneys of comparable skill, experience, and reputation in the community." <u>Nature's Enters., Inc. v. Pearson</u>, No. 08-cv-8549 (JGK)(THK), 2010 WL 447377, at *9 (S.D.N.Y. Feb. 9, 2010) (citation omitted).

"In ruling on applications for fees, district courts must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case."

---

[2] The twelve <u>Johnson</u> factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." <u>Arbor Hill</u>, 522 F.3d at 186 n.3. (citation omitted).

DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (citations and internal quotation marks omitted). Courts do not ask "whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992); see also Walker v. City of New York, No. 11-CV-314 (CBA), 2015 WL 4568305, at *8 (E.D.N.Y. July 28, 2015).

"As the fee applicant, plaintiff bears the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (alterations, citation, and internal quotation marks omitted).

### III.

The plaintiff requests the following rates for the lawyers for the hours indicated: Reibman at $625 per hour for 416.9 hours for a total of $260,565.50; Weiner at $625 per hour for 244.6 hours for a total of $152,875.00; Sanborn at $500 per hour for 665.1 hours for a total of $343,150.00; Jessica Massimi, a

former associate at the Firm, at $300 per hour for 171.8 hours for a total of $51,540.00;[3] Barry at $150 per hour for 202.4 hours for a total of $30,360.00.

The defendants argue that the rates requested by Reibman, Weiner, Sanborn, and Massimi are not reasonable, but the defendants concede that Barry's requested rate is reasonable.

The requested rates are at the outer limits of what is reasonable. See Mugavero v. Arms Acres, Inc., No. 03-cv-05724 (PGG), 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010) (observing that, as of 2010, consistent "precedent in the Southern District reveal[ed] that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time" (citation omitted)). However, they are not outside those limits. See, e.g., Bailey v. Pataki, No. 08-CV-8563 (JSR), 2016 WL 3545941, at *6 (S.D.N.Y. June 16, 2016) (rates of $600 and $550 reasonable for lawyers with over a decade of experience); Abdell v. City of New York, No. 05-CV-8453 (RJS), 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015) (rate of $650 reasonable for civil rights litigator in light of "skill and experience"); Barbour v. City of White Plains, 788 F. Supp. 2d 216, 225 (S.D.N.Y. 2011) ($625 rate

---

[3] The plaintiff had initially sought an hourly rate of S350 for Massimi, but reduced the requested hourly rate to $300 at oral argument.

reasonable for civil rights lawyers in light of skill and
experience), aff'd, 700 F.3d 631 (2d Cir. 2012) (per curiam).

Upon careful consideration of the submissions, the
circumstances of the case, the qualifications of the attorneys,
and relevant community standards, the Court concludes that the
rates of Reibman, Sanborn, and Massimi are reasonable, while the
rate requested by Weiner is unreasonably high.

Beginning with the attorneys who were present for trial,
Reibman is an experienced civil rights trial lawyer who has been
practicing for more than 35 years, and who also has extensive
experience litigating medical malpractice cases. See Reibman
Decl. ¶¶ 11-14, 22.

Weiner is likewise an experienced civil rights attorney who
has been practicing for over 27 years, and who also has
extensive experience litigating personal injury cases. Reibman
Decl., Ex. D (Weiner Declaration) ¶¶ 4, 6-7. In addition, Weiner
holds a medical degree from the New York University School of
Medicine. Reibman Decl., Ex. D ¶ 3. At oral argument, counsel
represented that Weiner is currently retained in a civil rights
case at an hourly rate of $625. See Oral Arg. Tr. dated June 15,
2017 at 14.

Sanborn is an experienced litigator who has been practicing
for more than 14 years. Reibman Decl., Ex. F (Sanborn
Declaration) ¶ 6. Sanborn was an associate at the firm Gilbride,

Heller & Brown, P.A. from 2002 to 2004, and then joined the firm Weil, Gotshal & Manges LLP as an associate from 2004 to 2010. Reibman Decl., Ex. F ¶¶ 7-8. From 2010 to 2015, Sanborn worked as a solo practitioner before joining Reibman & Weiner. Reibman Decl., Ex F ¶¶ 11-12. A review of Mr. Sanborn's declaration makes clear that he has a wide array of experiences in various fields of litigation, including civil rights litigation.

Carolyn A. Kubitschek --- an experienced civil rights attorney who has worked with the Firm as co-counsel and who observed portions of the trial --- attests to the skill of Reibman, Weiner, and Sanborn. She also attests that the rates requested for those attorneys are reasonable. See Reibman Decl., Ex. C (Carolyn A. Kubitschek Declaration). Her opinion in particular weighs in favor of finding the rates reasonable.

The experience of these attorneys in cases involving medical issues was significant to the case because the medical evidence played a key role in evaluating the plaintiff's claims. The parties produced rival medical experts. The City argued that the plaintiff's injuries to his shoulder were exaggerated and moreover that they could not have been caused by the alleged conduct of Officer Arico. The defendants' medical expert testified to that effect, which provided an evidentiary basis for a reasonable jury to find Officer Arico not liable. The jury plainly credited the testimony of the plaintiff's expert and

discounted the testimony of the defendants' expert, as reflected by the favorable verdict for the plaintiff and the magnitude of the judgment (both of which weigh in favor of the reasonableness of the rate charged). Although the defendants argue otherwise, the outcome of the case was a success for the plaintiff. See Abdell, 2015 WL 898974, at *5 (observing that "it can hardly be argued that a $185,000 damages award among the *four* Plaintiffs constitutes 'limited' success" (emphasis added)).

The rate requested by Reibman, while at the high end, is reasonable in light of, among other things, his experience and skill, including the skill he displayed at trial.

However, the hourly rate of $625 requested by Weiner is higher than he has been awarded recently. Specifically, two courts in 2014 found that a reasonable rate for Weiner in cases that were resolved through settlement was $450. E.g., Charles, 2014 WL 4384155, at *4; Hargroves v. City of New York, No. 03-CV-1668 (RRM) (VMS), 2014 WL 1270585, at *12 (E.D.N.Y. Jan. 6, 2014), report and recommendation adopted, No. 03-CV-1668 (RRM)(VMS), 2014 WL 1271039 (E.D.N.Y. Mar. 26, 2014). In Charles, Judge Engelmayer rejected a $500 per hour rate for Weiner as "unreasonable high." Charles, 2014 WL 4384155, at *4. Had Weiner tried the case, a rate of $625 might have been reasonable, as Kubitschek opines. However, Weiner did not participate at trial. A reasonable client would not pay that

13

rate for a lawyer just to observe and for his assistance in
preparing the case. Accordingly, upon a careful consideration of
all of the factors, including Weiner's role in the case,
Weiner's rate will be reduced to $550.

The defendants correctly argue that Sanborn's historical
rate at a large firm like Weil, Gotshal & Manges LLP should not
inform his current hourly rate, see, e.g., Schoolcraft v. City
of New York, No. 10-cv-6005 (RWS), 2016 WL 4626568, at *7
(S.D.N.Y. Sept. 6, 2016), modified on reconsideration, No. 10-
cv-6005, 2017 WL 1194703 (S.D.N.Y. Mar. 31, 2017), but the
defendants ignore that Sanborn charged an hourly rate of $450
for five years as a solo practitioner. Decl., Ex. F ¶ 11. While
the defendants fault Sanborn for being an associate at the Firm,
it is apparent that he is highly experienced and effective. In
light of, among other things, the skill and ability that Sanborn
displayed throughout the proceedings, including during trial,
the rate requested by Sanborn is reasonable.

Massimi has approximately six years of experience
litigating principally civil rights cases. Reibman Decl., Ex. H
(Massimi Declaration) ¶ 6. After she left the Firm, Massimi has
billed paying clients at an hourly rate of $300. Reibman Decl.,
Ex. H ¶¶ 10-11. Magistrate Judge Netburn recently concluded that
a reasonable hourly rate for Massimi was $300. Golding v. City
of New York, No. 15-CV-03498(ALC)(SN), 2016 WL 6553759, at *3

14

(S.D.N.Y. Nov. 4, 2016). Massimi's requested hourly rate of $300 is equally reasonable in this case.

However, it is plain that the total number of hours that the Firm billed is excessive and unreasonable. The plaintiff seeks compensation for 1722 hours. It is apparent that a reduction is warranted. No reasonable attorney would have billed a paying client in this type of case the hours for which the Firm seeks compensation, especially at the rates charged --- a client would not pay and would negotiate some sort of fee reduction. See Yea Kim v. 167 Nail Plaza, Inc., No. 05-CV-8560(GBD)(GWG), 2009 WL 77876, at *5 (S.D.N.Y. Jan. 12, 2009) ("In light of the relative simplicity of this case and the shortness of the trial, the Court has no trouble concluding that an award of 1778.7 hours would be excessive.").

The trial lasted four days. No novel questions of law were implicated. A review of the cases in this district and in the Eastern District of New York makes clear that that the "plaintiff's request is anomalous." Houston v. Cotter, No. 07-CV-3256(JFB), 2017 WL 587178, at *10 (E.D.N.Y. Feb. 14, 2017) (collecting cases).

Some of the excessiveness is attributable to the wide net cast by the Firm. While not rising to the level of sanctionable, it is apparent that the attorneys added multiple claims against multiple defendants that had little chance of success and were

15

barely colorable --- which is borne out by the voluntary dismissal of many of the claims and defendants at various points in the litigation. A reasonable client generally expects lawyers to advance theories that have a reasonable prospect of success within the circumstances of the case based on the law and the facts. That includes, from a plaintiff's prospective, prosecuting the case expeditiously to obtain a recovery expeditiously. Attorneys should not be rewarded for multiplying the proceedings and bringing unsuccessful claims against multiple defendants. Here, the excessive force and failure to intervene claims were the plaintiff's primary claims. They presented by far the best prospect for success and recovery. Unlike the other claims, the excessive force claim on which the plaintiff ultimately recovered was essentially dismissal-proof without a trial on the merits. Indeed, the defendants never moved to dismiss that claim. The additional claims and defendants prolonged the litigation, and the time it took for the plaintiff to have his case heard by a jury. Winnowing the claims and the defendants early would have expedited the case.

The lack of precision with which the attorneys drafted the pleadings also did not help advance the case. Similarly, the actions that the Firm took to coerce the City to pay the judgment more promptly (and for which the plaintiff now seeks reimbursement) --- specifically, serving the restraining notice

on Officer Arico even though the City had agreed to pay the judgment --- were unnecessary and not well-taken. Lawyers should not be rewarded for engaging in unreasonable efforts or attempts to play hardball. In any event, regardless of what the Firm believed about the prospects of its claims, the hours remain plainly excessive.

There are other myriad problems with the hours billed. For example, Weiner billed for his time observing the trial on the ground that he could provide unique medical insights to Reibman and Sanborn, who were actually trying the case. "Courts . . . have generally frowned upon awarding fees to more than two attorneys for court appearances unless the case is uniquely complex," Houston, 2017 WL 587178, at *10 (citation omitted) (collecting cases), which this case was not. Weiner did not enter a notice of appearance until after trial. Reibman and Sanborn were perfectly capable of trying the case. The explanation for Weiner's attendance is untenable. Reibman has expertise trying cases involving medical issues and did not need a silent partner in the gallery charging full freight for each day of trial attendance. Moreover, there was no justification for a fourth attorney, Barry, solely to assist Reibman and Sanborn at counsel's table. See Abdell, 2015 WL 898974, at *5 (noting that multiple lawyers "had a right to attend the trial,

but that does not mean that they have a right to be compensated for their time there").

There were numerous other instances of excessive billing. The attorneys billed in excess of 14 hours for drafting proposed voir dire questions that experienced civil rights attorneys should have been able to submit in a fraction of that time. The time charges for resisting the motion for summary judgment were in excess of $75,000 and the motion was occasioned by the unnecessary multiplication of claims and defendants.

The defendants point to other specific instances for which they argue the hours were unjustified. It is unnecessary to itemize all the instances where the hours were excessive, duplicative, or otherwise problematic. "It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate." Capitol Records, Inc. v. MP3tunes, LLC, No. 07-CV-9931, 2015 WL 7271565, at *5 (S.D.N.Y. Nov. 12, 2015) (citation omitted). A fifty percent cut in this case is warranted. See, e.g., Houston, 2017 WL 587178, at *12 (50 percent cut); Yea Kim, 2009 WL 77876, at *6 (40 percent cut). That yields a total of 861 compensable hours, comparable to the more reasonable 781 hours that the defendants expended in defending this case.

It should be noted that the defendants are not blameless in causing the Firm's hours to increase. It is apparent that the defendants engaged in certain obstructive tactics to frustrate the plaintiff's identification of the arresting officers --- including the officer who actually handcuffed the defendant --- which lengthened discovery and needlessly caused the Firm to expend more hours litigating this case (although that does not forgive the unnecessary addition of multiple defendants to this case). Hardball tactics lengthen litigations and are counter-productive. Hardball tactics have consequences for both sides.

Accordingly, the plaintiff is **awarded an attorney's fee of $410,071.25,** which is a reasonable fee in light of the circumstances of the case.[4]

## IV.

"[A] court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" Pennacchio v. Powers, No. 05-CV-985 (RRM)(RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998)). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." Id.; see also First Keystone Consultants, Inc. v. Schlesinger Elec.

---

[4] ($625 * (416.9/2)) + ($550 * (244.6/2)) + ($500 * (686.3/2)) + ($300 * (171.8/2)) + ($150 * (202.4/2)) = $410,071.25.

Contractors, Inc., No. 10-CV-696 (KAM)(SMG), 2013 WL 950573, at
*10 (E.D.N.Y. Mar. 12, 2013).

The plaintiff seeks $11,944.91 in costs.[5] Some of the costs,
such as $1,013.83 for meals, are "generally not recoverable."
Barkley v. United Homes, LLC, No. 04-CV-875 (KAM), 2012 WL
3095526, at *12 (E.D.N.Y. July 30, 2012), aff'd sub nom. Barkley
v. Olympia Mortg. Co., 557 F. App'x 22 (2d Cir. 2014) (summary
order), as amended (Jan. 30, 2014). Other costs, such as
$1,818.80 in lodging, are on their face extravagant. This
dispute was local. The Firm is located in Brooklyn, this Court
is located in Manhattan, and all of the relevant events occurred
in New York City. The lodging costs were not reasonable.

More fundamentally, however, there is insufficient
documentation to justify an award for any of the outstanding
costs. The plaintiff provides a one-page chart of "Itemized
Litigation Expenses," see Reibman Decl., Ex. L, but no receipts,
bills, or other form of documentation for the costs. Because the
documentation for the costs is insufficient, the request for
reasonable costs beyond what the defendants have agreed to pay
is **denied**. Therefore, the plaintiff will be awarded $3,443.87 in
costs.

---

[5] At oral argument, the plaintiff withdrew the reimbursement
requests for expert fees and those costs included in their
taxable bill of costs, which the defendants have already paid.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The plaintiff is **entitled to an award of $410,071.25 in reasonable attorney's fees and $3,443.87 in costs.** The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:     **New York, New York**
              **August 8, 2017**      **_____/s/_____**
                                      **John G. Koeltl**
                             **United States District Judge**